## 1170.  MUSGROVE *et al.* v. LUTHER PUBLISHING CO.

Where a person is appointed agent and signs a contract containing stipulations as to his duties and compensation, and afterwards in a different contract signed by two other persons, to which the agent is not a signatory party, it is agreed that the signers thereof will, upon the agent's failure to pay and notice thereof, pay his indebtedness arising under the agency contract or otherwise, the liability of the signers of the latter contract is that of guarantors; and they can not be sued jointly with the principal debtor.

Action on guaranty, from city court of Miller county—Judge Calhoun presiding.  February 27, 1908.

Submitted July 14,—Decided December 8, 1908.

The D. E. Luther Publishing Company appointed Musgrove its agent, and entered into a contract agreeing to furnish him "all books and bibles necessary for conducting the book business on what is known as the note plan, at fifty per cent. discount from schedule note prices;" the agent agreeing to pay for the books and to devote his time exclusively to selling them. This contract was signed only by Musgrove and the president of the publishing company. Several days later James Cheshire and J. S. Bush signed a writing addressed to the publishing company, and containing, among other stipulations, the following: "Please ship Mr. L. L. Musgrove such books as he may order from time to time and on his credit, and give him such time in which to pay

for them as you may deem proper. And in consideration of your supplying him with books, I, the undersigned James Cheshire and J. S. Bush, hereby undertake to guarantee to you that he shall well and truly make payment for all books shipped him by you and for other indebtedness due by him in his accounts with you; and should he fail to make payment in full of his accounts within the time you give him, I hereby become responsible to you for the payment for said books and other indebtedness in his accounts with you, and I further agree to pay the amount of said indebtedness within thirty days after I am notified of his default or failure to pay. But it is understood that in the event his indebtedness should amount to a larger sum, my liability herein is to be limited to two hundred and fifty dollars." Musgrove was not in any way a signatory party to this writing. At intervals during several months thereafter books were shipped to Musgrove; some of which he sold for cash, and others on credit, for which he took the purchaser's notes payable to the publishing company. In the wind-up the total amount of his account was $743.55, of which he paid $581.15, leaving a balance due of $162.40, which is the subject-matter of this controversy. To recover this balance the publishing company entered suit against Musgrove, Cheshire, and Bush as parties defendant, setting forth, in exhibits attached to the petition, the agency contract, the contract signed by Cheshire and Bush, and also the account showing the balance due by Musgrove, and alleging that demand had been made on Musgrove and then on Cheshire and Bush, and payment refused. The defendants at the proper time raised the point of a misjoinder of parties defendant and a misjoinder of causes of action. The demurrers were overruled, and exceptions pendente lite preserved. The trial resulted in a verdict directed by the court against Musgrove as principal and Cheshire and Bush as sureties. They except to the overruling of their motion for a new trial, and assign error on the exceptions pendente lite.

*W. I. Geer,* for plaintiffs in error.

*Bush & Stapleton,* contra.

HILL, C. J. (After stating the foregoing facts.)

The controlling question in the case arises upon the construction of the contract signed by Cheshire and Bush. If this is a contract of guaranty, the demurrer on the ground of misjoinder

of parties should have been sustained, because a guarantor and his principal are not joint promisors such as may be sued in the same. action. *Manry* v. *Waxelbaum Co.,* 108 *Ga.* 14, 17 (33 S. E. 701); *Sims* v. *Clark,* 91 *Ga.* 302 (18 S. E. 158); Reed *v.* Cutts, 7 Greenleaf (Me.), 186 (22 Am. D. 184). It is often difficult to tell whether a particular contract is one of guaranty or suretyship. "A surety and a guarantor have this in common, that they are both bound for another person; yet there are points of difference between them which should be carefully noted. A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. He is an original promisor and debtor from the beginning, and is held ordinarily to know every default of his principal. . . On the other hand, the contract of the guarantor is his own separate undertaking, in which the principal does not join. It is usually entered into before or after that of the principal, and is often founded on a separate consideration from that supporting the contract of the principal. The original contract of the principal is not the guarantor's contract, and the guarantor is not bound to take notice of its non-performance." 1 Brandt on Suretyship (3d ed.), §2. The surety joins in the same promise as his principal and is primarily liable; the guarantor makes a separate and individual promise and is only secondarily liable. His liability is contingent on the default of his principal, and he only becomes absolutely liable when such default takes place and he is notified thereof. 20 Cyc. 1400 et seq.; Childs on Suretyship & Guaranty, 7. Measured by these rules, it seems clear that the contract in the case at bar is one of guaranty, and not of suretyship. It is merely collateral to the contract which the principal signed; and he is in no way a signatory party thereto. The sole purpose of this collateral contract is to guarantee the faithful performance of the main contract; and the language used shows secondary and not primary liability. In no way do the guarantors join in the promise made by their principal; nor the principal in the contract made by his guarantors. The case of Singer Mfg. Co. *v.* Littler, 56 Iowa, 601 (9 N. W. 905), is strikingly similar to the instant case. The plaintiff, a manufacturer of sewing machines, appointed one Littler its agent; and afterwards the defendants signed a contract guaranteeing the faithful performance by Littler of his agency

contract. The court says: "Littler was, or was about to become,. indebted to plaintiff upon the contract under which he was appointed agent. Defendants were not bound upon that contract.. Neither were they bound upon the notes, accounts, acceptances,. or upon any contract upon which Littler became indebted to plaintiff. They became first and only bound upon' the bond, whereby they guaranteed that Littler would pay his indebtedness to plaintiff, in whatever form it assumed. A guarantor becomes bound for the performance of a prior or collateral contract upon which the principal alone is indebted. A surety is bound with the principal upon the contract under which the principal's indebtedness arises. This is a familiar doctrine of the law. Upon applying it to the facts of the case, it will be seen that defendants are guarantors, and not sureties." See also Kramph v. Hatz, 52 Pa. St. 525; Saint v. Wheeler, 95 Ala. 362 (10 So. 539, 36 Am. St. R. 210). In fact the instrument signed by the guarantors in this case is in no material particular different from that involved in the case of *Consolidated Portrait Co.* v. *Claxton,* 1 *Ga. App.* 809 (57 S. E. 980), wherein we held that the obligation created was that of guaranty and not suretyship. The writing there was as follows: "Should R. W. ·Coursey order goods of you at one or several times within the next twelve months ·from date of this· letter of credit, we jointly and severally request that you ship· such goods to his order allowing credit thirty days from date of shipment; and if said R. W. Coursey fails to pay for such goods· within thirty days after date of shipment, we agree to pay for said goods at the price you charged him for same, provided our responsibility shall not exceed two hundred dollars." See also· *Small Co.* v. *Claxton,* 1 *Ga. App.* 83 (57 S. E. 977), *Andrews* v. *John Church Co.,* 1 *Ga. App.* 560-566 (58 S. E. 130).

It is insisted, however, that by the provisions of our Civil Code,. §2966, the writing sued on is a contract of suretyship, since in. a contract of guaranty the consideration must be "a benefit flowing· to the guarantor." Always when the promisee incurs legal detriment in exchange for the promise, it is sufficient to make the· promise binding, and it is immaterial whether the benefit which. is the counterpart of the detriment inures directly to the promisor· himself or to some one else for whose benefit he made the prom-- ise. Furthermore, it is to be presumed that he receives some-

benefit from credit extended to his principal or other indulgence granted him. 1 Brandt, supra, §25. In interpreting the forego-- ing section we must remember that it is not of statutory origin. This identical language appears in the Code of 1861 (§2125), and is merely a statement of certain common-law principles. At the time this section was inserted in the code, and to-day, it is universally held that if there be a consideration for the promise of the guarantor, it is immaterial whether or not the guarantor himself gets any immediate and direct benefit therefrom. 1 Brandt on Suretyship (3d ed.), §23; 20 Cyc. 1413. Of course the mere naked promise to pay the debt of another, by which the princi-- pal debtor gains no benefit and the creditor incurs no detriment, is ineffectual to create any kind of suretyship contract, whether it be by guaranty, indorsement, or suretyship in the narrower sense of the term. Civil Code, §3656; *Gay* v. *Mott,* 43 *Ga.* 252,. 254; *Davis* v. *Banks,* 45 *Ga.* 138; *Hollingshead* v. *American Nat. Bank,* 104 *Ga.* 250 (30 S. E. 728). A past consideration—one-- which has already served its purpose in a former transaction— is not sufficient to support a contract of guaranty; and where such a contract is created subsequently to the main contract, it must be supported by a new consideration. *Hargroves* v. *Cooke,* 15 *Ga.* 321; *Green* v. Thornton, 49 N. C. 230; 20 Cyc. 1417. It often happens, therefore, that contracts of guaranty do have the ele- -ment of an independent consideration the benefit of which flows directly to the guarantor. Brandt, supra, §2. But this is merely a circumstance, and not a decisive test which would convert a contract bearing every earmark of suretyship into guaranty. Would it be contended that bonding companies, who make a busi- ness of standing surety, upon judicial and official bonds and upon contracts of like character, are guarantors, and not sureties, be- cause they receive a consideration the benefit of which flows im- mediately to them? It would be anomalous to say that the mere fact of the receipt by the promisor of an independent and imme-- diate benefit would make him a guarantor and not a surety. Sure-- tyship is more burdensome than guaranty. "A surety binds him- self to perform if the principal does not, without regard to his. ability to do so. His contract is equally absolute with that of his. principal. They may be sued in the same action, and judgment may be entered up against both. A guarantor, on the other hand,.

does not contract that his principal will pay, but simply that he is able to do so. . . Before an action can be maintained against a guarantor, therefore, it must be shown that the principal is unable to perform." *Manry* v. *Waxelbaum Co.,* supra. Certainly it is not the meaning of our code section that merely because the promisor receives an independent benefit he is to be held to the less burdensome liability.

The nature of a contract is to be determined from the language used, together with the other circumstances of the transaction. Since the contract of guaranty is a separate undertaking and is often entered into before or after the main contract to which it is collateral, it quite frequently happens that it is supported by an independent consideration; and the presence of such a consideration may be a circumstance indicating guaranty and not suretyship. But, as we have already said, the fundamental difference between these two classes of contracts is that the surety is primarily liable, while the guarantor is only secondarily liable; the surety joins in the promise which his principal makes, while the guarantor makes a separate and individual promise in which his principal may or may not join, the sole purpose of which is to give the creditor additional recourse in the event he is unable to make his money out of the rights given him by the main contract. The fact that the promisor receives no independent benefit from the consideration which makes his promise binding does not of itself impose upon him primary liability, when the language used and the other circumstances of the transaction clearly indicate only contingent and secondary liability. When a man promises to become sponsor for the debt of another, his promise is to be strictly construed. Civil Code, §2968. The wise man wrote, "He that is surety for a stranger shall smart for it, and he that hateth suretyship is sure." Proverbs, XI, 15. When men, disregarding this ancient warning, take upon themselves the obligation which Judge Lumpkin has called "a lame substitute for a thorough knowledge of human nature," every ambiguity and doubt is to be resolved, not so as to increase, but so as to decrease the burdens thereby assumed. *Jones* v. *Whitehead,* 4 *Ga.* 397, 402. As has been said by Chief Justice Marshall, "The law will subject a man, having no interest in the transaction, to pay the debt of another, only when his undertaking manifests a clear intention to bind himself

for that debt. Words of doubtful import ought not, it is conceived, to receive that construction. It is the duty of the individual, who contracts with one man on the credit of another, not to trust to ambiguous phrases and strained constructions, but to require an explicit and plain declaration of the obligation about to be assumed." Russell *v.* .Clark, 7 Cranch, 69 (3 L. ed. 278). We find it unnecessary, however, in the case at bar to invoke the aid of any such rule of construction. The language used is free from ambiguity, and every other circumstance is clearly indicative of guaranty and not suretyship. Since the fact of misjoinder of parties was apparent from the declaration itself, there was error in overruling the demurrer thereto. This initial error has rendered the subsequent proceedings nugatory, and it is unnecessary to consider any of the other assignments of error.

*Judgment reversed.*